# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDRE JOHNSON, individually and on behalf of more than 50 other Credentialed Delegates of the General Assembly of the Church of God in Christ, Inc., | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) No. 14-cv-8986 |
| v. | )<br>) Judge Ronald A. Guzmán |
| JAMES W. HUNT, et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction. Civil case terminated.

## STATEMENT

Andre Johnson ("Plaintiff") brings this suit on behalf of himself and "more than 50 other credentialed delegates of the General Assembly of the Church of God in Christ, Inc." against the Church of God in Christ, Inc. ("the Church"), James W. Hunt, Sr., Charles E. Blake, Sr., Phillip Aquina Brooks II, Lawrence H. Winbush, Frank O. White, and Jerry Wayne (collectively, "Defendants"). The complaint seeks declaratory and injunctive relief related to internal disputes regarding Church governance. (Am. Compl., Dkt. # 11.) For the reasons set forth below, the Court dismisses the complaint sua sponte because the Court lacks subject matter jurisdiction over this suit.

## Background

The Church is a nonprofit religious organization chartered and headquartered in Tennessee, with branches and individual members located in Illinois. (Am. Compl., Dkt. # 11 ¶ 1.) The Church is governed by its constitution, which provides for a General Assembly that passes legislative resolutions, a Judiciary Board that acts as the final authority on constitutional interpretation, and a General Board that operates akin to a board of directors in a conventional corporation. (*Id*. ¶¶ 2-4.) Plaintiff is a citizen of Illinois and a pastor within the Church, and sits in the General Assembly as a credentialed delegate. (*Id*. ¶ 5.) The individual Defendants are all Bishops within the Church who hold offices in the Church's governing structure, including the Chairman of the General Assembly and several members of the General Board. (*Id*. ¶¶ 6-11.) None of the individual Defendants is a citizen of Illinois. (*Id*.)

Plaintiff's voluminous allegations of internecine strife within the Church need not be reviewed here, as the particulars are not relevant to the limited question before the Court. Plaintiff's suit essentially urges the Court to resolve a power struggle between the Judiciary Board on one side and the General Assembly and General Board on the other, as Plaintiff believes that various actions by the individual Defendants violate procedures mandated by the Church constitution. Specifically, Count I of Plaintiff's complaint seeks declaratory relief to the effect that under the Church constitution: (1) the Chairman of the General Assembly is obligated to respect the rulings of the Judiciary Board; (2) the General Assembly is obligated to formally investigate charges Plaintiff has made against its Chairman; and (3) the General Board is obligated to initiate proceedings against the Chairman in the General Assembly. (*Id*. ¶¶ 62-64.) In the event the Court declines to award such declaratory relief, Plaintiff alternately seeks a

declaration that all actors within the Church must comply with the decisions of the Judiciary Board on the three issues above. (*Id*. ¶ 65.) Count II seeks injunctive relief, enjoining: (1) the Chairman of the General Assembly from disobeying the directives of the Judiciary Board; (2) the General Board and the individual Defendants from disobeying the Judiciary Board; and (3) any newly-elected justices from being seated on the Judiciary Board until the Judiciary Board decides such candidates are qualified. (*Id*. ¶ 79.)

Plaintiff brings this suit on his own behalf and, "with their express consent, on behalf of more than fifty (50) other duly credentialed delegates of the General Assembly" as a derivative action under Tennessee Code Annotated Section 48-56-401. (*Id*. ¶ 5.) Plaintiff filed an emergency motion for a temporary restraining order on April 6, 2015, asking the Court to: (1) strip the Chairman of the General Assembly of his position pending investigation into his actions; (2) enjoining everyone else in the Church from "tampering with or otherwise interfering with" that investigation; (3) freezing the membership of the Judiciary Board to prevent any new members from being seated; and (4) enjoining any disciplinary proceedings against the Chief Justice of the Judiciary Board. (Mot. Temporary Restraining Order, Dkt. # 29.) At the April 7, 2015 hearing to address this motion, the Court expressed grave doubts as to whether it possessed subject matter jurisdiction over this dispute, and instructed the parties to file briefs addressing the matter. The Court having received and reviewed the parties' arguments, it appears that subject matter jurisdiction is lacking and Plaintiff's complaint must be dismissed without prejudice.[1]

## **Legal Standard**

---

[1] Because the Court concludes that it does not possess subject matter jurisdiction over this suit, it is not necessary to reach the parties' argument as to whether consideration of these claims is also barred by the First Amendment abstention doctrine.

3

The district courts of the United States are "courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). In light of this limitation, jurisdiction will not be presumed and in all cases "the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Property Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012). A federal district court has a constitutional obligation to scrutinize complaints for jurisdictional defects, and to dismiss on its own initiative suits over which it lacks subject matter jurisdiction. *See Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992) ("Prompt, sua sponte recognition of flaws in subject matter jurisdiction is commendable. Indeed, it is the district court's duty to review the pleadings carefully for such defects"). Such dismissals are "hazardous," however, when made without notice or opportunity to be heard. *Shockley v. Jones,* 823 F.2d 1068, 1072 (7th Cir. 1987). Accordingly, a district court considering such a dismissal "should grant the plaintiff leave to amend, allow the parties to argue the jurisdictional issue, or provide the plaintiff with the opportunity to discover the facts necessary to establish jurisdiction" unless the defect is clearly incurable. *Id*. at 1073.

There are two general avenues through which a plaintiff can establish subject matter jurisdiction and thereby secure a federal forum for his claims. The federal courts have original jurisdiction in "federal question" cases in which a plaintiff seeks to vindicate a federal right arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. Congress has also granted district courts original jurisdiction in "diversity" cases – civil actions between citizens of different states, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens. *See* 28 U.S.C. § 1332. Once a court has original jurisdiction over

some claims in a suit, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *See Mine Workers v. Gibbs*, 383 U.S. 715, 728 (1966).

While subject matter jurisdiction exists for federal question cases of any size, diversity cases may only be brought in federal court "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). When this jurisdictional threshold is not contested, a court must "accept the plaintiff's good faith allegation of the amount in controversy unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Where, however, the plaintiff's allegations regarding the amount in controversy are called into question, the plaintiff bears the burden of proving such jurisdictional facts by a preponderance of the evidence. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). To satisfy this burden, the plaintiff must do more than "point to the theoretical availability of certain categories of damages." *Am. Bankers Life Assur. of Florida v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003). Once the plaintiff has established facts justifying his estimate of the amount in controversy, uncertainty about whether damages will actually exceed the threshold does not justify dismissal. *See Meridian*, 441 F.3d at 543.

## **Discussion**

Plaintiff's complaint asserts that the Court possesses both federal question jurisdiction over this suit under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332(a). (Am. Compl., Dkt. # 11 ¶ 12.) With regard to federal question jurisdiction, the complaint alleges that such jurisdiction is based on the fact that "the issues requiring resolution implicate

5

jurisprudential issues deemed to arise under the First Amendment to the United States Constitution." (*Id.*) Jurisdiction under 28 U.S.C. § 1331 exists only when a federal question is presented on the face of a properly pled complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). That a plaintiff anticipates his opponent will raise a defense sounding in federal law does not establish jurisdiction, as "[a] defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

Plaintiff's complaint does not allege any violations of federal law or interference with federal rights, being founded solely on the Church's constitution and Tennessee state law governing derivative suits against nonprofit corporations. While First Amendment issues relating to the role of the courts in policing the internal affairs of religious organizations have been raised as defenses, such issues are not implicated on the face of the complaint. Plaintiff abandons any arguments on this point in his brief addressing the Court's jurisdictional concerns, arguing only that jurisdiction is proper under the diversity statute and failing to mention federal question jurisdiction at all. (Pl.'s Mem. Supp. Subject Matter Jurisdiction, Dkt. # 46.) Accordingly, subject matter jurisdiction over this dispute cannot be predicated on the existence of a federal question.

Only diversity of citizenship remains as a possible basis for the Court's jurisdiction over Plaintiff's claims. As a threshold matter, the Court does not agree with the parties that total diversity has been adequately established. While Plaintiff has alleged that his own citizenship differs from that of all Defendants, both parties have neglected the fact that this suit is brought on behalf of not only Plaintiff but also "more than 50 other Credentialed Delegates of the General Assembly of the Church." (Am. Compl., Dkt. # 11.) Plaintiff's complaint alleges that this suit is brought with the consent of these 50 other Church members, but nowhere does Plaintiff identify

the citizenship – or even the identities – of such members. The parties appear to have assumed that only Plaintiff's citizenship matters for establishing diversity, and that the unidentified Church members are irrelevant so long as Plaintiff is diverse from all Defendants. This assumption, however, depends on whether Plaintiff's suit qualifies as a class action under 28 U.S.C. § 1332(d) – and, if so, whether it satisfies the elevated amount in controversy applicable to such claims. The Class Action Fairness Act altered the usual requirement of total diversity by providing that in class actions for which the matter in controversy exceeds $5,000,000.00, federal courts have original jurisdiction as long as any class member is diverse from any defendant. *See* 28 U.S.C. § 1332(d)(2); *see also Travelers Property Cas.,* 689 F.3d at 726 (noting that the CAFA "modified diversity jurisdiction rules so as to permit federal diversity jurisdiction where diversity is only minimal but the matter in controversy exceeds $5,000,000"). The statute defines "class action" to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Plaintiff has offered no authority to suggest that the Tennessee state law under which he sues qualifies as a "class action" under federal law. Unlike a traditional class action as defined in 28 U.S.C. § 1332(d)(2), Tennessee Code § 48-56-401 does not permit suits by "1 or more representative persons" on behalf of a similarly situated class. Rather, suits under the statute can only be brought on behalf of a *corporation* (not a class of individuals), and can only be brought by "(1) Any member or members having five percent (5%) or more of the voting power or by fifty (50) members, whichever is less; or (2) Any director." Tenn. Code Ann. § 48-56-401. Accordingly, Plaintiff cannot avail himself of the relaxed diversity requirements under 28 U.S.C. § 1332(d)(2), and jurisdiction would only be proper if each of the 50 unidentified Church

members were diverse from all Defendants. Plaintiff has failed to offer any information on the citizenship of these unnamed plaintiffs either in his Complaint or in his brief in support of jurisdiction, and the Court therefore cannot conclude that total diversity exists.

Even if suits under the Tennessee statute do qualify as class actions and only Plaintiff's citizenship matters in the diversity analysis, jurisdiction is still lacking because Plaintiff has failed to show that his claims meet the elevated amount-in-controversy threshold applicable to class actions that meet the minimal diversity standard. As noted above, district courts have original jurisdiction over class actions with less than complete diversity only where those suits concern an elevated amount in controversy of $5,000,000.00. Plaintiff has failed to show or even argue that the value of this suit approaches $5 million, and dismissal for lack of jurisdiction is therefore necessary. As noted below, however, this elevated amount in controversy threshold is not essential to the Court's ruling because Plaintiff's claims fail to meet even the standard amount in controversy threshold of $75,000.00.

The only allegation in Plaintiff's complaint relating to damages is an unelaborated assertion that "the amount in controversy exceeds $75,000.00, exclusive of interest and costs." (Am. Compl., Dkt. # 11, ¶ 12.) The complaint does not actually seek an award of damages, requesting only declaratory and injunctive relief and "reasonable expenses in bringing this action (including counsel fees)." (*Id*. ¶¶ 65, 79.) When relief sought is declaratory or injunctive rather than monetary, a district court applying the jurisdictional threshold must attempt to measure the amount in controversy "by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977). The value of the injunctive or declaratory relief must necessarily be estimated, and may be assessed from either party's viewpoint. *See Meridian*, 441 F.3d at 542 (noting that in equitable relief cases, the amount in

controversy may be "what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant"). Where the suit in question is a class action or otherwise involves multiple plaintiffs, the cost equitable relief imposes on the defendant must be apportioned pro rata among members of the class. *See In re General Motors Corp. Dex-Cool*, No. CIV. 05-10008-GPM, 2006 WL 2818773, *9 (S.D. Ill. Sept. 27, 2006).

Here, Plaintiff has failed to meet his burden of proving by a preponderance of the evidence that the value of the relief he seeks exceeds $75,000.00 to either party. No estimate is made of either the cost to the Church of complying with Plaintiff's demands or the value of compliance to Plaintiff and his fellow delegates. Plaintiff's only argument regarding the value of the relief he seeks is that the conduct this suit seeks to enjoin could jeopardize the Church's tax-exempt status. (*See* Pl.'s Mem. Supp. Subject Matter Jurisdiction, Dkt. # 46, at 3) ("[Plaintiff's] allegations regarding the amount in controversy derive principally from the fact that [Plaintiff] is pursuing the instant matter as a derivative action seeking, among other things, to compel the non-profit Church to take action in order to preserve, among other things, the Church's tax-exempt status.") Plaintiff argues that Defendants' defiance of the Judiciary Board amounts to *ultra vires* action under Tennessee law, and that taking such action threatens the Church's "ability to maintain is [sic] standing as a non-profit corporation under § 48 of the Tennessee Code." (Am. Compl., Dkt. # 11, ¶ 75.)

That any actual risk of losing tax-exempt status exists is a fact relevant to the jurisdictional analysis, and Plaintiff bears the burden of proving that fact by a preponderance of the evidence. *See McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (holding that a plaintiff asserting that the amount of controversy is met "must come forward with competent proof that [he has] satisfied the jurisdictional threshold and not simply point to the

theoretical possibility of recovery for certain categories of damages."). He has failed to do so, as he has not alleged any facts or cited to any authority showing that violations of a church's internal constitution may result in that church being stripped of tax-exempt status. Moreover, even if that fact were proven, Plaintiff would still need to allege facts from which the Court could infer that this loss of tax-exempt status exceeds $75,000.00 in value to either party. Plaintiff has made no effort to estimate the Church's tax liability if such status were lost, and as such the Court has no basis upon which to conclude that the value of maintaining tax-exempt status exceeds the amount in controversy threshold.

Finally, Plaintiff argues that the jurisdictional threshold is met in this case quite apart from the value of the requested declaratory and injunctive relief because, under the Tennessee derivative suit statute, the losing party in this action may be liable to the prevailing party for reasonable expenses and attorney's fees. (Pl.'s Mem. Supp. Subject Matter Jurisdiction, Dkt. # 46, at 4-5.) This argument unquestionably fails. The Seventh Circuit has made clear that the possibility of recovering attorney's fees at the *conclusion* of an action is irrelevant in assessing whether subject matter exists at the *beginning* of an action, because "federal jurisdiction exists, if at all, at the time of filing." *Smith v. Am. Gen. Life & Acc. Ins. Co.*, 337 F.3d 888, 896-97 (7th Cir. 2003); *see also Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001) ("The amount *in controversy* is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins.") (emphasis in original). Because any legal fees either party has incurred (or will incur) would not have existed had Defendants bowed to Plaintiff's initial demands, the possibility of recovering such fees does not count towards satisfying the amount in controversy requirement. *See Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998)

(holding that "legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed").

Plaintiff having failed to prove by a preponderance of the evidence any facts establishing that the amount in controversy exceeds the jurisdictional threshold, subject matter jurisdiction is lacking and the Court must dismiss this case without prejudice. *See Downs v. IndyMac Mortgage Servs., FSB*, 560 Fed. App'x 589, 592 (7th Cir. 2014).

## **CONCLUSION**

For the reasons above, Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction. Civil case terminated.

**SO ORDERED.**                                    ENTERED:   May 26, 2015

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**